IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



ALBERT RANDOLPH,

    Plaintiff,

v.                                             Civil Action No. **3:08CV708**

LORETTA KELLY, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Plaintiff, a Virginia prisoner proceeding *pro se* and *in forma pauperis*, filed this civil action. Defendants have filed motions for summary judgment, arguing only that Plaintiff has failed to exhaust his administrative remedies. Plaintiff has filed a reply.[1] Defendants' motion for summary judgment is ripe for decision.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is to be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers

---

[1] Plaintiff has also filed his own motion for summary judgment, to which Defendants have not responded.

to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* Fed. R. Civ. P. 56(c) and 56(e) (1986) (amended 2007)). When reviewing a summary judgment motion, a court "must draw all justifiable inferences in favor of the nonmoving party . . . ." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Here, Defendants contend that the action must be dismissed because Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because exhaustion of administrative remedies is an affirmative defense, it is Defendants' burden to plead and prove it. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, Defendants are only "entitled to summary judgment if the proffered evidence is such that a rational factfinder could only find for [them]." *Smith v. Ozmint*, --- F.3d ----, No. 07-6558, 2009 WL 2366134, at* 3 (4th Cir. July 31, 2009) (*citing Gooden v. Howard County, Md.*, 954 F.2d 960, 971 (4th Cir. 1992)). Defendants have supported their motions for summary judgment with an affidavit, a copy of the pertinent grievance regulations, and copies of various grievances and requests filed by Plaintiff. Plaintiff has submitted a sworn complaint, two affidavits, and copies of grievances and requests he filed. In light of the foregoing principles and submissions, the following facts are established for purposes of the motion for summary judgment.

## II. SUMMARY OF PERTINENT FACTS

### A.    Plaintiff's Claim for Relief

Plaintiff, who suffers from asthma, was transferred to Sussex I State Prison ("Sussex I") on February 1, 2008. On March 7, 2008, officials moved Plaintiff from a non-smoking pod into a smoking pod, albeit with a non-smoking cellmate. Shortly thereafter Plaintiff began to experience shortness of breath, wheezing, and other asthmatic symptoms. In spite of repeated attempts to obtain a transfer to a non-smoking pod, Plaintiff was not moved. On July 7, 2008, Plaintiff was transferred to a new cell with a cellmate who smokes around three packs of cigarettes per day. Plaintiff claims that Defendants[2] violated his rights under the Eighth Amendment[3] by exposing him to high levels of environmental tobacco smoke ("E.T.S."). Plaintiff seeks damages in the amount of $350,000 from each Defendant, along with injunctive relief.

### B.    The Pertinent Grievance Procedures

The Virginia Department of Corrections ("VDOC") maintains a grievance procedure for resolving inmate complaints. The pertinent VDOC regulations require that, before submitting a formal grievance, the inmate must make a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve

---

[2] Plaintiff is suing Loretta Kelly, Warden of Sussex I; Keith Dawkins, Unit Manager of Plaintiff's housing unit; R. Wallace, Treatment Program Supervisor; D. Jones/Shiftlett (hereinafter "Shiftlett"), former Treatment Program Supervisor; D. Hudson, Grievance Coordinator; D. Bernado, Grievance Official; Ms. Witt, Offender Records Officer; Mrs. Bailey, Medical Administrator; Mrs. Webb, LPN Nurse; G.F. Sivels, Regional Ombudsman; David Robinson, Regional Director; and Mrs. Evans, Offender Records Designee.

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

complaints. VDOC Operating Procedure § 866.1(V)(A)(1). Generally, this requires an inmate to file an informal complaint form. *Id.* If the informal complaint does not resolve the problem, the inmate must initiate a formal grievance by submitting a standard form. *Id.* at § 866.1(VI)(A)(2). "The original *Regular Grievance* (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Warden/ Superintendent's Office for processing by the Institutional Ombudsman/Grievance Coordinator." *Id.* at § 866.1(VI)(A)(2)(b). Furthermore, the inmate must attach to the formal grievance form documentation of his attempt to informally resolve the issue. *Id.* at § 866.1(VI)(A)(2)(a). A regular grievance must be filed within thirty (30) days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the inmate's control. *Id.* at § 866.1(VI)(A)(1).

There are up to three levels of review for a regular grievance. *Id.* at § 866.1(VI)(C). The warden or superintendent of the facility in which the inmate is confined is responsible for Level I review. *Id.* at § 866.1(VI)(C)(1). If the inmate is dissatisfied with the determination at Level I, he may appeal the decision to Level II, a review which is conducted by the VDOC Regional Director, the VDOC Health Services Director, or the VDOC Chief of Operations for Offender Management Services. *Id.* at § 866.1(VI)(C)(2). The Level II response should indicate whether the inmate may pursue an appeal to Level III. *Id.* at § 866.1(VI)(C)(2)(f).

### C. Plaintiff's attempts to exhaust his claims

Plaintiff repeatedly attempted to present his claim to staff at Sussex I. On March 28, 2008, Plaintiff sent forms requesting a transfer to a non-smoking pod for health reasons to Defendants Dawkins, Wallace, Shiftlett, and Kelly, and also Counselor Baines. Defendant Dawkins responded that "It is important to note that while every offender who claims non-

4

smoking status cannot be housed in the non-smoking pod, this facility does ensure they are assigned to a cell with a non-smoker. If you have further issues, please let me know." (Pl.'s Resp. Br. Opp'n Mot. Summary J. Enc. B at 2.)[4] Defendant Dawkins returned the other request forms without processing them because they were repetitive.

On April 3, 2008, Plaintiff submitted a medical request form asking if the medical department could "show through my medical record that I am an asthmatic patient and do not need to be around smokers." (Pl.'s Resp. Br. Opp'n Mot. Summary J. Enc. C.) On April 28, 2008, D. Waller replied, "Yes, if there is something in your medical record as not being a smoker and having asthma. Are you in a smoking cell[?]" (Pl.'s Resp. Br. Opp'n Mot. Summary J. Enc. C.)

On April 10, 2008, Plaintiff filed an informal complaint to Defendant Shiftlett complaining that the smoke from adjacent cells aggravated his asthma. On April 14, 2008, the request was returned by Defendant Witt, who ruled it a request for service and instructed Plaintiff to speak with Defendant Dawkins. (Pl.'s Resp. Br. Opp'n Mot. Summary J. Pl.'s Aff. ¶ 11.) On April 11, 2008, Plaintiff filed two informal complaints to Defendant Hudson, one complaining that he was housed in a smoking pod and one complaining about Defendant Wallace's lack of action. Defendant Witt refused to process either complaint, instructing Plaintiff to send a request to Defendant Dawkins, Plaintiff's unit manager. (Pl.'s Resp. Br. Opp'n Mot. Summary J. Pl.'s Aff. ¶ 12-13.)

On April 11, 2008, Plaintiff requested that the medical administrator release his medical records pertaining to his history of asthma to Defendants Dawkins and Evans and counselor

---

[4] The Court has corrected any capitalization errors when quoting the parties' submissions.

Baines to facilitate his transfer to a non-smoking pod. The request was denied by Nurse Webb, who explained that the officials in question would have to personally request the records. (Pl.'s Resp. Br. Opp'n Mot. Summary J. Pl.'s Aff. ¶ 14.)

On April 16, 2008, Plaintiff sent a medical request to Defendant Bailey requesting treatment because his exposure to secondhand tobacco smoke was causing him to wheeze and triggering his asthma. On April 21, 2008, Nurse Webb responded, explaining that "your housing unit assignment is per security please talk to your counselor." (Pl.'s Resp. Br. Opp'n Mot. Summary J. Pl.'s Aff. ¶ 15.) Nurse Webb did not address Plaintiff's request for medical treatment.

On April 30, 2008, Plaintiff filed an informal complaint addressed to Defendant Hudson, complaining about the previous responses to his requests and the continued failure to move him to the non-smoking pod. On April 28, 2008, Defendant Witt rejected his complaint, ruling it a request for service. (Pl.'s Resp. Br. Opp'n Mot. Summary J. Pl.'s Aff. ¶ 17.)

On May 1, 2008, Plaintiff filed an informal complaint to Warden Kelly regarding other inmates smoking in non-smoking areas during recreation. Grievance Official D. Bernardo rejected the complaint, ruling it a complaint on behalf of other offenders. (Pl.'s Resp. Br. Opp'n Mot. Summary J. Pl.'s Aff. ¶ 18.)

On May 1, 2008, Plaintiff submitted a request form to the Medical Administrator stating that, according to Defendant Shiftlett, only the Medical Department could order a transfer based on Plaintiff's asthma. On May 5, 2008, Nurse Webb responded, stating that Plaintiff's records would be consulted. (Pl.'s Resp. Br. Opp'n Mot. Summary J. Pl.'s Aff. ¶ 20.)

On May 8, 2008, Plaintiff submitted a request form to the medical department stating only that "I would like to be tested for E.T.S." (Pl.'s Resp. Br. Opp'n Mot. Summary J. Enc. D.) On May 13, staff responded "If you are referring to the tests in regards to cigarette smoke - DOC does not do that type of testing." (Pl.'s Resp. Br. Opp'n Mot. Summary J. Enc. D.)

On May 16, 2008, the grievance department received a regular grievance from Plaintiff, stating that he was a documented non-smoker and chronic asthmatic who had been placed in 4A pod, which housed smokers. On June 11, 2008, Assistant Warden J. Woodson provided the Level I response. Woodson noted that he would be released to a transition pod when he became eligible. In the meantime, Randolph would continue to live in 4A Pod with his current non-smoking cellmate, which satisfied the applicable regulations. The grievance was dismissed as unfounded, and Plaintiff was informed of his right to appeal. (Pl.'s Resp. Br. Opp'n Mot. Summary J. Ex. II at 2.)

Defendant claims that Plaintiff "did not appeal" the denial to the Regional Director's office. (Br. Supp. Mot. Summary J. ¶ 6.) In support of this assertion, Defendant has produced an affidavit from Defendant Hudson, who is also the Ombudsman for Sussex I, stating that "[t]here is nothing in our records to indicate that Randolph appealed the Level I decision to the Regional Director's office." (Br. Supp. Mot. Summary J. Ex. 1 ¶ 9.) Plaintiff, however, disputes this claim. Plaintiff avers that he received the June 11, 2008 response on the evening of June 15, 2008. Plaintiff placed his appeal in the institutional mail box on the morning of June 16, 2008.[5]

---

[5] The Level I response invites Plaintiff to appeal to:
Eastern Regional Office
Virginia Department of Corrections
1001-F Obici Industrial Blvd.
Suffolk, VA 23434.

7

Plaintiff has also submitted a response from the Regional Ombudsman dated June 29, 2008, which states that "Your appeal receipted [sic] in this Office on 6/26/08, exceeded the five (5)-calendar day time limit. According to the grievance database, the Level I response was mailed to you on 6/13/08. No further response will be provided." (Pl.'s Resp. Br. Opp'n Mot. Summary J. Ex. II at 1.) The grievance log number on Regional Ombudsman Sivels's response matches that of Plaintiff's original grievance. (Pl.'s Resp. Br. Opp'n Mot. Summary J. Ex. II. at 2.)

On July 7, 2008, Plaintiff was moved into a different cell with Patrick Jasper, an inmate who smokes around three packs of cigarettes per day. Plaintiff requested a transfer from Defendants Dawkins, but none had been made as of November 4, 2008. (Pl.'s Resp. Br. Opp'n Mot. Summary J. Ex. III.)

### III. EXHAUSTION ANALYSIS

Prisoners must exhaust all available administrative remedies before filing a lawsuit in federal court. The pertinent statute provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Generally, in order to satisfy the exhaustion requirement the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Additionally, the Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "'so that the agency addresses the issues on the merits,'" *id.* (*quoting*

*Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, the applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Because the statute does not define the term available, "courts have generally afforded it its common meaning; thus, an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (*citing Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). Accordingly, a prisoner who has "utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively . . . . has exhausted his available remedies, even if prison employees do not respond." *Id.* (internal citation and quotation marks omitted) (*citing Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)).

Defendant has failed to establish that Plaintiff's claims are unexhausted. VDOC officials repeatedly gave contradictory information regarding which department was responsible for addressing his concerns, and Plaintiff's informal grievances were returned unprocessed. When the responsible officials finally processed his grievance, it was denied. Plaintiff filed his appeal immediately. Because the prison mail system required ten days to deliver his appeal, it arrived at the Regional Ombudsman's office after the five-day appeal deadline had elapsed. The Regional Ombudsman thus denied his grievance as untimely. Under the circumstances, no remedy appears to have been actually available to Plaintiff beyond his Step I formal grievance. *See Dole*, 438 F.3d at 809.

9

Defendant also argues that Plaintiff's claim regarding placement with a smoking cellmate is unexhausted because there is no record that he filed a complaint. The Court does not believe that Plaintiff's claims are analytically distinct for the purposes of the exhaustion. Plaintiff's grievances were clearly sufficient to put the VDOC on notice that exposure to tobacco smoke was damaging his health, thereby affording a "fair and full opportunity" to address the issues Plaintiff brings in his current lawsuit. *Woodford*, 548 U.S. at 90; *Moore*, 517 F.3d at 729 (*citing Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). The record before the Court indicates that Plaintiff "utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." *Moore*, 517 F.3d at 725 (*quoting Woodford*, 548 U.S. at 88). The failure of the VDOC to take advantage this opportunity should not bar Plaintiff from seeking relief in the courts. Defendants' motion for summary judgment will be DENIED.

The parties are to submit any additional dispositive motions within thirty (30) days of the date of entry hereof. Failure by Defendants to respond to Plaintiff's motion for summary judgment will be treated as a failure to contest the allegations therein.

/s/
Richard L. Williams
United States District Judge

Date: MAR 0 9 2010
Richmond, Virginia