
FILED
SEP - 8 2010
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ALBERT RANDOLPH,

    Plaintiff,

v.                                                                    Civil Action No. 3:08CV708

LORETTA KELLY, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Plaintiff, a former Virginia prisoner proceeding *pro se* and *in forma pauperis*, filed this civil action. Plaintiff has filed a motion for summary judgment, to which Defendants have replied. This matter is ripe for judgment.

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is to be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate

'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* Fed. R. Civ. P. 56(c) and 56(e) (1986) (amended 2007)). When reviewing a summary judgment motion, a court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Plaintiff has supported his motion for summary judgment with a sworn complaint and an affidavit from a former cellmate. Defendants have provided eleven affidavits in their opposition to Plaintiff's motion. In light of the foregoing principles and submissions, the following facts are established for purposes of the motion for summary judgment.

## II. SUMMARY OF PERTINENT FACTS

### A. Plaintiff's Claim for Relief

Plaintiff, who suffers from asthma, was transferred to Sussex I State Prison ("Sussex I") on February 1, 2008. On March 7, 2008, officials moved Plaintiff from a non-smoking pod into a smoking pod, albeit with a non-smoking cellmate. Shortly thereafter Plaintiff began to experience shortness of breath, wheezing, and other asthmatic symptoms. In spite of repeated attempts to obtain a transfer to a non-smoking pod, Plaintiff was not moved. On July 7, 2008, Plaintiff was transferred to a new cell with a cellmate who smokes around three packs of cigarettes per day. Plaintiff claims that Defendants[1] violated his rights under the Eighth

---

[1] Plaintiff is suing Loretta Kelly, Warden of Sussex I; Keith Dawkins, Unit Manager of Plaintiff's housing unit; R. Wallace, Treatment Program Supervisor; D. Jones/Shiftlett (hereinafter "Shiftlett"), former Treatment Program Supervisor; D. Hudson, Grievance Coordinator; D. Bernado, Grievance Official; Ms. Witt, Offender Records Officer; Mrs. Bailey, Medical Administrator; Mrs. Webb, LPN Nurse; G.F. Sivels, Regional Ombudsman; David Robinson, Regional Director; and Mrs. Evans, Offender Records Designee.

Amendment[2] by exposing him to high levels of environmental tobacco smoke ("E.T.S."). Plaintiff seeks damages in the amount of $350,000 from each Defendant, along with injunctive relief.

## B. Additional Facts Advanced on Summary Judgment

Plaintiff was transferred to Sussex I on February 1, 2008. Sussex I officials initially housed Plaintiff in a non-smoking unit. On March 7, 2008, Plaintiff was transferred to a unit housing mostly inmates who smoke. One week later, Plaintiff submitted a request form in which he explained that "I have chronic asthma, and the inmates over here smoke openly in the pod. I'm being subjected to inhale high levels of secondhand smoke, which is causing me to have breathing problems and headaches, which I normally would not be having . . . ." (Pl.'s Mot. Summary J., Ex. IV, Enc. A.) Defendant Webb responded that "Secondhand smoke is not good for anyone and it does pose a health issue for anyone with respiratory problems. You need to talk to your counselor about moving. Medical can't order cell changes." Despite many subsequent requests for medical testing, release of his medical records, and transfers, Plaintiff was unable to obtain a transfer. Indeed, Plaintiff claims that, from July 7, 2008 to August 6, 2008, Defendants assigned him to share a cell with P. Jasper, a "documented smoker, who smokes three packs of cigarettes a day." (Compl. ¶ 9.)

Defendants dispute the severity of Plaintiff's medical condition and the conditions under which Plaintiff was housed at Sussex I. Defendants have submitted an affidavit from B.H. Soloria, the Health Administrator at Sussex I, who reviewed Plaintiff's medical record. Soloria

---

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

3

avers that an April 16, 2008 medical examination of Plaintiff's complaint of wheezing showed that he was not in acute distress and that his lung sounds were clear and respirations normal. (Defs.' Br. Supp. Mot. Summ. J. & Reply to Pl.'s Mot. Summ. J. ("Defs.' Br."), Ex. IX, Soloria Aff. ("Soloria Aff.") ¶ 7.) Plaintiff was seen again on April 11, 2009 for complaints of chest tightness. At this examination, the examiner noted that Plaintiff had not had an attack since April 2008, that he had not used his inhaler for the week prior to this visit, and that his lung sounds and respiration were normal. (Soloria Aff. ¶ 8.) Plaintiff was not seen by medical for asthma-related complications between April 11, 2009 and April 5, 2010, the day the affidavit was executed. (Soloria Aff. ¶ 9.) Plaintiff's medical records lack any indication that his asthma rendered a cell transfer medically necessary. (Soloria Aff. ¶ 10.) This corresponds with an affidavit submitted by Defendant D. Shiftlett, who remembers being told by the Sussex I medical department that Plaintiff's asthma was not serious enough to require re-assignment.

Defendants have also produced the affidavit of C.D. Faircloth, Building and Grounds Superintendent of Sussex I. Faircloth explains that, while "[a]ir in the common areas is re-circulated," "100% of the air in each individual cell is exhausted to the outside of the building (by way of the roof) and is replaced with fresh outside air which comes in from the side of the building." (Defs.' Br., Ex. III, Faircloth Aff. ("Faircloth Aff.") ¶¶ 6, 4.) According to Faircloth, this arrangement is necessary to avoid cross-contamination of cells "in case OC spray has to be used in an inmate's cell." (Faircloth Aff. ¶ 5.) Defendants also aver that "a review of Jasper's records indicates that Jasper said that he was not a smoker and that he would like to be placed with a non-smoking cell partner where possible. Moreover, a review of Jasper's commissary

purchases revealed that he purchased tobacco on only two dates since his arrival at Sussex I."
(Defs.' Br. ¶ 7.)

### III. ANALYSIS

An inmate's Eighth Amendment rights are violated when he is subjected to an unnecessary and wanton infliction of pain, *see Wilson v. Seiter*, 501 U.S. 294, 298 (1991), "contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A two-part test is used to determine whether prison conditions present a constitutional violation. The plaintiff must show: "'(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (*quoting Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)). The first showing requires the court to determine whether the deprivation of a basic human need was "*objectively* 'sufficiently serious,'" while the second requires it to determine whether the officials *subjectively* acted with a "'sufficiently culpable state of mind.'" *Id.* (*quoting Wilson*, 501 U.S. at 298) (emphasis in original).

To satisfy the objective element of an Eighth Amendment claim, the deprivation complained of must be extreme and amount to more than the "'routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 1380 n.3 (*quoting Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Thus, Plaintiff must allege facts which suggest that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions, *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997) (*quoting Strickler*, 989 F.2d at 1381), or that Plaintiff's continued, unwilling exposure to the challenged conditions

5

creates a substantial risk of such harm. *Id.* (*citing Helling*, 509 U.S. at 33-35). As for the subjective component, "[d]eliberate indifference is a very high standard - a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (*citing Estelle*, 429 U.S. at 105-06). This standard requires a plaintiff to introduce evidence from which the finder of fact could conclude that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (*quoting Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In order to demonstrate "that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (*citing Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). A prison health care provider is not deliberately indifferent if he responds reasonably, or even merely negligently, to known risks. *See Estelle*, 429 U.S. at 106; *Brown v. Harris*, 240 F.3d 383, 390-91 (4th Cir. 2001); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Evidence that a defendant recklessly refused or delayed in providing a plaintiff with access to medical professionals with sufficient expertise to evaluate and treat a particular condition may support an inference of deliberate indifference. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1277-79 (10th Cir. 2001).

Plaintiff has not demonstrated that the undisputed facts in this case entitle him to relief. Defendants have provided evidence that calls into question Plaintiff's ability to satisfy the injury requirement. The injuries Plaintiff alleges he sustained - aggravated asthma, headaches,

dizziness, nausea, shortness of breath, and watery eyes - are not sufficiently serious so as to satisfy the objective element of an Eighth Amendment claim. *See, e.g., Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (holding that plaintiff failed to allege injuries that were "sufficiently serious to be constitutionally actionable," where plaintiff stated that exposure to environmental tobacco smoke resulted in breathing problems, chest pains, dizziness, sinus problems, headaches, and a loss of energy); *Oliver v. Deen*, 77 F.3d 156, 160 (7th Cir. 1996) (finding that evidence of "considerable" medical treatment for asthma-related concerns following exposure to smoke did not establish constitutionally significant injury). Plaintiff's Motion for Summary Judgment (Docket No. 31) will be DENIED.

The Clerk is DIRECTED to send a copy of this Memorandum Order to Plaintiff and counsel of record.

It is so ORDERED.

/s/
Richard L. Williams
United States District Judge

Date: SEP 0 8 2010
Richmond, Virginia